Jeff Titus, a body in Titus for the Appellant. In listening to the last almost hour worth of arguments on billboard cases, I was struck by how different both the procedural and factual situation is in the case that we present here coming from the City of Beaumont. The original City of Beaumont Sign Ordinance, the one thing you won't find in any of the City's briefs in the lower quarter here is any pretense that it was constitutional. It was an ordinance that said if the City Planner liked signs or liked your signs, you can have them. If the City Planner didn't like your signs, you can't have them. Period. We're here today on a motion to dismiss that was granted. So there is no after the fact declarations, no evidence. You were on a 12B, right? And it was on the original complaint. And what's interesting about it is the timing of our case is different than I understand the timing to be of the other cases. We applied for our permits. We were denied. We appealed that for the proper process. We were denied there. We filed the lawsuit. Months after we filed the lawsuit, the City finally amended its statute and then immediately within a very short period of time filed a motion to dismiss on mootness based on what they had just done. Well, in your situation, even let's assume for just this moment that the District Court erred by applying vesting law to the damages analysis, right? Yes. But how do you prevail on your First Amendment claims? Well, we prevail on the First Amendment claims because OMG had a right... Give me your strongest argument of a First Amendment violation. Billboards are used, contrary to what the City's Attorney has argued, billboard companies put up non-commercial messages as well as commercial. And we were deprived of our right to do either. For those people who live in any city, they see all sorts of billboards ranging from tacky to charitable messages that the billboard companies themselves are funding. Under the discretion of Beaumont exercise, my client was deprived of putting up any of those types of messages. And unlike the other cities, if you look at the record, it's page 179 and 180, which is the Planning Commission's report. And what struck me there is we were not in a city at the time we applied that said, we want no more billboards. On page 179 of the record, it talks about how they wanted to put signs up. At the bottom of the sentence, the proposal combined with prior signs approved recently by the City Council would result in. Beaumont had just approved signs. We don't even know on this record when those applications were made. They may have been made before, I mean, after my client applied. But what we do know is that at the time my client applied, Beaumont was allowing signs. We also know from this report, and this is literally, these two pages are the only thing outside the pleadings and the ordinances themselves that we have, that at least the City Planning Commission considered content. In the paragraph before that that I read, it's the fourth paragraph down, the staff gives three reasons why they think that this should be denied. Reason number two is, quote, the potential advertising content of the sign. That's a First Amendment violation there to consider potential advertising content as a reason to restrict or deny a billboard permit. Nothing in any case starting with Metro Media across the board allows that. Now the ultimate conclusions do not bring in the content-based issue, but the fact that it's in the report and that they had unfettered, unlimited discretion with no criteria and the fact that we have no evidence apart from these two pages because it was on a 12b6 motion tells us that the city apparently may have considered potential content in denying the signs here. What we also don't have here is any evidence. In fact, this report is silent on the issue, so I assume there is no evidence that the signs violated any content-neutral building, safety, electrical or other code. Nowhere is there any suggestion that they were in the wrong zoning area, that they were oversized, that they would not comply with the uniform building code, would not comply with the uniform electrical code. Certainly for Outdoor Media Group, they had a couple hundred signs at the time they were in business that were legal. They knew how to build a legal sign. There's no suggestion here that Outdoor Media Group intended to build them. It was on a primary highway, which I believe these were, without proper Caltrans approval and without fulfilling the state requirements. So that all we're left with here was a denial of a permit application based solely on discretionary matters that are not spelled out in any ordinance and where at least content was at least part of what was considered. The two errors I believe that the district court made, both related to moteness, one relates to the damages issue. We cited a case, we filed a letter with the court in the last day or so. I know the city issued a letter with a large number of cases. The one case that they didn't cite to the court is if you go to Shepherds and you shepherdize this district court opinion, it comes up with two decisions. One is a covenant media case against Huntington Park, which Judge Morrow ruled on, and that's discussed in the briefs. The other is also a covenant media case out of, I hope I'm pronouncing it right, the city of Des Plaines in Illinois. That came down March 7, 2007. And that case, I mean, I could read it to you and sit down because that's my argument on damages, which is simply that we have a 1983 violation because it's an unconstitutional statute. Deprivatives have the right to have the permits. Well, is the time, go ahead. I was going to say that last case is the one that we, you just sent us the letter on in the last day or two. That's correct, Your Honor. What type of injury has to be established for nominal damages, and is the injury analysis different depending on the type of claim that you're advancing, whether it's prior restraint, over breadth, or as applied? Well, I don't think the injury analysis is different here. I mean, we have to show either nominal or actual damages. I believe under 1983, we need to show that we are seeking redress for a violation of a constitutional right. And here, I think we have both a facial challenge to the ordinance. If we like your signs, you can have them. If we don't like your signs, you can't. And in particular, they didn't like my client's signs. So that is an as-applied challenge. And particularly where there's at least an implication or an intimation that there may have been some content-based consideration, that's a violation of 1983. We had a First Amendment right to put these signs up because absent the city planner exercising their discretion, there was nothing in the law that prevented these signs from being built. Because the record is very clear, there's nothing that shows that we were going to build an oversized, improperly zoned, unpermitted, or anything else, any other type of improper sign. And in terms of the damages, I think it's just a causation analysis. Many of the cases that were discussed in the last hour and that are in the city's brief, well, you could not legally have built the sign anyway because it was double the size that either ordinance allows. That's a garden variety causation issue. You don't have any damages caused by the unconstitutional part of the ordinance because you didn't comply with the constitutional part. There is no constitutional part of the old ordinance that anyone has pointed to that we were in violation of. Mainly because the old ordinance really was silent on everything. If you filed the application today under the ordinance, could it be approved or would it be approved, or do you know? I don't know. Is it in violation of any provision of the ordinance in its present form? The new ordinance proposal. Bans everything. It says it bans everything. That's no new signs at all. That's what it says. Why doesn't that solve the mootness problem? Well, for two reasons. One, of course, for the damages. We were damaged under the old ordinance. We sued under the old ordinance. We were denied under the old ordinance. And we're entitled to redress both nominal and actual damages based on the violation of the old ordinance, not what they did after the fact to fix it. The other thing is, is that because, again, we're here on a 12B6 motion, there's no record having explored it. One of the reasons they denied us is a hypothetical possible new development in ten years where our signs might not be the type of signs they want for that new development. That tells me that although they have put in an ordinance that purports to say no new signs, that may not be what they intend to stick with once this court's done, once this case is over. And that goes back to the city of Mesquite type analysis. Unlike the records in the Get Outdoor cases where there apparently is evidence that relates to the issue of whether the statute may or may not be changed or reenacted, we have no such evidence here. And the problem I have is that, you know, it may very well be Beaumont intends never to have any new signs again, but that's not consistent with the two pages of evidence we have where they say, well, these signs may conflict with the new development. We may want to wait so that we get signs that don't conflict with that development in ten years' time. That doesn't sound like no new signs to me. Do you want to reserve the balance of your time? Yes, I do. Thank you. Thank you. Thank you. This case is indeed different in one regard. Just because it's a different case, do you want to state your name again? Yes. I know who you are, but. Okay. Randall Morrison for the city of Beaumont. Thank you. Thank you. This case is slightly different from the Get Outdoors cases because we have an application to the planning people, and then it's appealed to the planning commission, and then it goes to the city council. And at all three steps, the answer was no. So if there's any kind of issue about due process, certainly due process was fulfilled. They had their opportunity to present their evidence and their arguments, and they failed at every step. Now, since the process they were going through is called a conditional use permit, therefore, under California law, which must control all points of property law, their exclusive remedy is a writ for administrative mandate under California Code of Civil Procedure 1094.8. It's the wrong court. It's the wrong cause of action. They have no business being here whatever. I'd be happy to provide the court with a short memo on that point if it wishes. This was made known to me in another case I'm working on very recently. One case that discusses this issue is called Patrick Media Group versus the California Coastal Commission. That is the fundamental flaw which completely dooms this case. It is now far too late for them to file a writ of administrative mandate under CCP 1094.5. I said .8 before. That's a special version which applies to expressive conduct and gives a 21-day statute of limitation. So on that factor alone, this is a completely dead case. It's absolutely moot. This case is also based on the same thing. I think you did a brief about this. That's right. It was only emphasized to me very recently. That's true. But it is conclusive. It's a jurisdictional point. What was the case you just cited for us? I don't have the citation. I have the name. Patrick Media Group versus California Coastal Commission. And when? Oh, let's see. That case is roughly 14, 15 years ago, I believe. Is the appellant's counsel as surprised as we are? Yes, Your Honor. This was raised in the motion to dismiss in the underlying case, and the district court did not get to this point. Okay. You thoroughly briefed it, and I disagree with the position. I'm not prepared to argue with it. I understand. This case is based on the same false premise as the Get Outdoors cases, though, and that is that the building of the billboard is a constitutional right. That's false. It's a structure. It's not a message. The First Amendment exists to protect expression, not structures, and not the pursuit of profit. Nominal damages. What would be the basis for any kind of damages, real damages or nominal damages? If they maintain that they have damages in preparing the applications, that's no good under California law, because California law for property rights, investing of permit rights, is very clear. Soft costs don't count. Is there a basis for attorneys' fee, excuse me, damages award of any kind based on the procedure they went through and the denial of the CUPs? No. Even if one line in the report says because of the advertising messages, that's only one of three or four grounds that are given. And furthermore, it's not specific as to any kind of message or any kind of speaker or any kind of viewpoint. And furthermore, the other points of denial are all pure zoning. They're all looking at the question of the appropriateness of this structure to this location. It's plain and simple pure zoning. The city was not involved in any kind of message censorship. As far as a damage claim giving them a way to avoid mootness, the damage claim has to have some basis of plausibility, and there is none here. Now, all of the decisions that were made on the CUP were planners' decisions. They were not censor decisions. There's nothing about we don't like alcohol ads, we don't like casino ads, we don't like gentlemen's clubs ads. Whatever may be a hot point in some cities, there's nothing like that in the record here. Furthermore, the reasons that are given are because this site is to be developed in the near future. Would that conflict? Would existing billboards conflict with land development that's expected in the near future? Of course it would. Somebody who's going to come in and put a shopping center, do they want great big billboards blocking their view from the freeway? No, they don't, and the city knows that. Is the city free to prefer the commercial development over the billboards? Yes, it is, as a zoning matter. There's all kinds of discretion that's entirely permissible in the zoning context. The second reason was to avoid adverse visual impact. And the third reason was it would adversely affect existing views of open space. Now we move to the mootness point, which was the main one discussed by the trial court, and the key issue there is whether there's any effective relief that can be granted today. And the answer, of course, is no, because the city does indeed have a policy adopted after the lawsuit was filed which said we're finished fooling around with this billboard stuff. The answer is no. We have enough. No more. That really is conclusive. The other point that I want to make here, and it's detailed in the brief, is that they acquired no rights whatever by filing their applications. There's all kinds of case law that says billboard entitlement to vested rights to develop or to build is controlled entirely by state law. State law in California is the toughest of all the states in the union. You must not only get a valid permit and act on it in good faith, you must go out and build on the ground. And until the bulldozers arrive, you do not have a vested right in any kind of permit or in any kind of zoning. I need to just go back briefly because I think that the panel is going to have to ascertain if this is something we have to address. Is it your 1094.5? It's .5. Now, is your argument, is it jurisdictional? Yes. All right.  But obviously since we've never heard this before, we're not going to be, you can't expect counsel to be prepared to, on the other side, to be prepared to address this. That's right. And so I suspect, and I'm going to talk with my panel here, but that we may require you within one week to supply us with a five, no more than five-page letter brief on that point. And if we feel that it has any merit, then we would certainly allow counsel for the appellant to respond to that. If we feel that it doesn't have any merit, then maybe we don't need to have a response. But I think obviously we can't fairly respond to it in this venue, and I wouldn't expect appellant's counsel to do that. Right. I agree with all that, and I would welcome the opportunity to file a new brief on this particular point. No, we don't want to, we want less than five pages. That's fine. Letter brief. Okay. I mean, we don't want a new, we have a lot of briefs. I see that. I also want to state on the record, as counsel for the City of Beaumont, that that city has no intention whatever to return to a scheme where they allow billboards on any kind of basis whatever. I am assured of that by the City Council. The other point I want to emphasize, and it applies in the previous cases also, is the discussion about the duty of the judicial branch to operate with a presumption of good faith as to legislative bodies. The best discussion of that is in the Fair case, number two, out of Chicago. In the Covenant Media v. Huntington Park case, there is a footnote, which I believe is quoted in full in my brief, and it talks about the permit vesting rule has a possible exception when there's bad faith shown by the city. The argument has been in the sign company's brief that they were deprived of the opportunity to rely, but the footnote in Covenant Media v. Huntington Park says, yes, this bad faith exception might apply when the action of the government is in the nature of spot zoning. It's retaliation against one particular proposal for development. We don't have that here. We have a new ban on billboards that applies not only to the area where OMG wants to build new structures, but also across the entire city, every sign company, everybody, everywhere, all the time. So this certainly does not fall within that exception. That's all I have. Thank you for listening. I don't want to start the clock running yet. I don't want to get into your time, but I do have a question. Sure. Mr. Titus, obviously that we do have to address jurisdictional issues, and so my proposal, and without going, I don't want you to use your time on this, but I want to clear it with you, would be to have the city within one week give us a no more than five-page letter brief and that you would obviously get a copy as well. We will review it, and if we feel that it needs a response, meaning that we feel that it may have some merit and we want to hear from you about that, then we will contact you and give you two weeks to respond to it. If we feel that it does not, that we have jurisdiction and we would proceed just as we're proceeding here today, we won't have your respond. Is that acceptable to you? That's acceptable. And just so the court knows, this was raised in the motion to dismiss. It was thoroughly briefed. The district court did not get to this point because it found mootness. Now, I don't believe that they felt it was jurisdictional, and as I'm certain that when the court sees at least both sides of the issue, there's still a case here for the court to decide. Right. Well, we always have to make sure that we have jurisdiction to do what we do. All right. Then you can deal with your rebuttal at this point. Thank you. Thank you. Very briefly, I'd like to call the panel's attention to page 180 of the excerpt of records because there was a serious misstatement by counsel for the city. The first paragraph, and I'm going to read it in full, it says, with regard to the advertising content of the signs, if the proposal were to be approved by the Planning Commission, staff would recommend conditions to preclude the advertising of adult-oriented businesses on the sign and provisions for revocation of the permit if this condition is violated. There's a very specific, we don't want adult advertising on these signs, basis in part for denying my client's applications right in their own report. So this is at least in part a content-based decision. But again, it asks us that the court look at the new covenant media decision that we cited in our letter and look at the same covenant media decision in the Huntington Beach case the counsel just cited because ultimately Judge Mora did not find that case to be moot because she found that there still was a damages claim alive and permitted the case to proceed. The final point I would make because it's been made a few times here that a billboard is not speech. You could argue, I suppose, that a newspaper is a piece of paper with ink on it, but that's really an elevating form over substance. My client puts non-commercial messages up on its billboards. So does every billboard company that I've ever represented or known. That is speech. And it's unconstitutional statute that prohibits us from putting up those non-commercial messages is a prior restraint and an unconstitutional violation of our First Amendment rights. Thank you for your attention. Thank you. All right, this case will now stand submitted. The court will be in recess until tomorrow morning at 9 o'clock.
judges: Hall, Callahan, Strom